IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01312-RM-NRN

LARON ANTONIO DONALD,

Plaintiff,

v.

DR. DOUGLAS L. PEARSON, Dentist,
Warden MARK FAIBAIRN,
LINDSAY GOUTY, H.S.A.,
DR. MICHAEL HALE, Chief of Dentistry,
MICHELLE BRODEUR, Director of Clinical and Correctional Services, and
CHRISTOPHER MAUL, Chief Medical Officer,

Defendants.

---

**REPORT AND RECOMMENDATION ON
THE CDOC DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS (DKT. #32)
AND
DEFENDANT DOUGLAS PEARSON'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) (DKT. #34)**

---

**N. Reid Neureiter**
**United States Magistrate Judge**

This matter is before the Court on Orders (Dkt. ##33, 35) entered by Judge

Raymond P. Moore referring Defendants Fairbairn, Gouty, Hale, Brodeur, and Maul's

(the "CDOC Defendants") Rule 12(b)(6) Motion to Dismiss (Dkt. #34), and Defendant

Douglas Pearson's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed.

R. Civ. P. 12(b)(6). (Dkt. #34.) Plaintiff LaRon Donald ("Plaintiff" or "Mr. Donald") filed

responses to the motions to dismiss (Dkt. ##45, 46) and the respective Defendants filed

replies. (Dkt. ##53, 54.) The Court heard argument from the parties on January 4, 2023.

(*See* Dkt. #55.)

The Court has taken judicial notice of the Court's file and considered the applicable Federal Rules of Civil Procedure and case law. Now being fully informed and for the reasons discussed below, the Court makes the following recommendation.

**BACKGROUND[1]**

Mr. Donald is an inmate currently incarcerated at the Arkansas Valley Correctional Facility ("AVCF"). (Dkt. #9 at 6.) In April 2021, he began to experience "sensitivity and discomfort in his teeth." (*Id.*) After submitting a "Request for Sick Call" on April 17, 2021, Mr. Donald saw Defendant Pearson, a dentist, and described the issues he was experiencing. (*Id.*) Defendant Pearson diagnosed Mr. Donald with several dental needs, including a few teeth with early routine decay that would require fillings, and three partially erupted molars. (*Id.*) Defendant Pearson informed Mr. Donald that he would provide treatment at a later date. (*Id.*)

Fourteen weeks later, in August 2021, Mr. Donald saw Defendant Pearson for treatment and informed him that his discomfort and sensitivity had transformed into severe pain whenever eating or drinking. *Id.* Mr. Donald complained that a 17-year-old filling on his front tooth was worn down and loose and asked for it to be refilled. (*Id.*) Defendant Pearson denied this request, instead offering to file down Mr. Donald's other tooth to match the worn state of the existing filing. (*Id.*) Defendant Pearson informed Mr. Donald that the cavities could "go longer" before treatment was required. (*Id.*) In addition to refusing to fill the cavities, Mr. Donald claims that Defendant Pearson

---

[1] The following allegations are taken from Plaintiff's Amended Prisoner Complaint (Dkt. #9) and all nonconclusory allegations are presumed true for the purposes of deciding the motions to dismiss. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

refused to provide Mr. Donald with a night guard to help prevent teeth grinding. (*Id.* at 7.) Mr. Donald claims that he begged Defendant Pearson for some treatment during the August 2021 visit, but Defendant Pearson refused to provide any. (*Id.*)

On or about October 12, 2021, Mr. Donald submitted another Request for Sick Call explaining the severe pain he was in due to the cavities. He also requested a mouth guard to prevent jaw pain and teeth grinding. (*Id.*)

On or about October 18, 2021, Mr. Donald filed a Step 1 grievance requesting that Defendant Pearson be required to fill the cavities, which he alleges were causing him "sever[e] and debilitating pain and suffering." (*Id.*) Defendant Pearson denied this grievance.

Sometime thereafter,[2] Mr. Donald attempted to file a Step 2 grievance, but was informed that his Step 1 grievance had disappeared. As a result, his case manager was required to transform his Step 2 grievance into a Step 1 grievance and restart the process. (*Id.* at 8.)

Mr. Donald submitted another Request for Sick Call on October 22, 2021 and stated that the cavities hurt so badly he felt like it was "killing" him. (*Id.*) Defendant Pearson did not respond or provide treatment.

On October 28, 2021, Mr. Donald submitted another Request for Sick Call asking for treatment and explained, "The pain is so extreme I can't think." (*Id.*) Again, Defendant Pearson did not respond. Mr. Donald also submitted another Step 1

---

[2] There appears to be some discrepancy in the dates that Mr. Donald provides regarding his grievances, as he previously alleged that the Step 1 grievance was filed on October 18, 2021.

grievance "to address the delay that the destruction of his first grievance had caused as it would prevent him form [*sic*] receiving medical treatment for his cavities." (*Id.*)

On November 8, 2021, Mr. Donald submitted a Step 2 grievance again complaining about the lack of treatment. Defendant Michael Hale, another CDOC dentist, denied the grievance. (*Id.*)

On November 18, 2021, Mr. Donald felt a sharp pain and crunch while eating, and spit out a fragment of his tooth. (*Id.*) He attempted to declare a medical emergency, but an officer told Mr. Donald that he would not be seen unless he was bleeding or swelling. (*Id.*) Mr. Donald then submitted another Request for Sick Call, stating that he was unable to eat and was losing weight." (*Id.*) Again, Defendant Pearson did not provide treatment.

On December 8, 2021, Mr. Donald filed a Step 3 grievance complaining that Defendant Pearson still had yet to provide any treatment for the dental cavities. (*Id.*) This grievance too, was denied.

On December 17, 2021, Mr. Donald submitted another Request for Sick Call. This time, he requested a tube of Orajel to at least ease the dental pain he was experiencing. (*Id.*) Mr. Donald alleges that Defendant Pearson did not respond.

On December 29, 2021, Mr. Donald had a dental appointment with Defendant Pearson. Instead of providing treatment, Defendant Pearson reviewed the grievances Mr. Donald had filed and became very irritated. Defendant Pearson asked Mr. Donald whether he was the author. (*Id.*; *see also id.* at 10.) According to Mr. Donald, Defendant Pearson shoved the papers into Mr. Donald's hands and forced Mr. Donald to read the grievances out loud, and then asked Mr. Donald asked something to the effect of "Do

you think it was wise to write something like this when I'm the one who is going to perform a surgical procedure on you?" (*Id.* at 8, 10.)

Defendant Pearson then asked Mr. Donald why he had not declared an emergency if he was truly experiencing severe pain, and Mr. Donald explained that he had been informed he would not be treated if he was not bleeding. (*Id.* at 11.) Defendant Pearson continued to berate Mr. Donald, and Mr. Donald attempted to draw the attention of Defendant Gouty, the Health Services Administrator, but she could not hear him. Defendant Pearson told Mr. Donald to "shut up." (*Id.*)

Mr. Donald inquired whether he would receive any treatment that day, and Defendant Pearson informed him that he would pull three teeth and fill one. (*Id.*) However, Defendant Pearson had not taken any new x-rays or examined Mr. Donald's mouth to determine whether extraction was necessary. (*Id.*) Mr. Donald was concerned because it was only eight months earlier that Defendant Pearson had said that the cavities were only in their beginning stages. Mr. Donald told Defendant Pearson that he did not believe it was necessary to pull three teeth. (*Id.*)

Mr. Donald alleges that Defendant Pearson then stated, "Oh, you're gonna tell me how to do my job, you know everything," while waving the grievances in Mr. Donald's face. (*Id.*) The apparently tense conversation continued, and eventually Mr. Donald asked Defendant Pearson to show him which tooth would be filled. Defendant Pearson pointed to Mr. Donald's upper right cheek, and Mr. Donald protested that there was no pain in that area. (*Id.* at 12)

Mr. Donald then became concerned that Defendant Pearson "was attempting to pull his good teeth and not fix his cavities with fillings to punish him for filing

5

grievances." (*Id.*) Mr. Donald requested a mirror so that he could use it to see which tooth Defendant Pearson was referring to and alleges that Defendant Pearson shoved a handheld mirror into his hand so forcefully that it caused pain. (*Id.*)

At this time, Mr. Donald attempted to leave and Defendant Pearson tried to block the path to the doorway. Mr. Donald claims that Dr. Pearson knew that if Mr. Donald touched him in any way while he was attempting to leave, Defendant Pearson could subject Mr. Donald to disciplinary proceedings by claiming Mr. Donald had assaulted him. (*Id.*)

Mr. Donald was able to leave the room and a staff member found him. Mr. Donald requested to speak with Defendant Gouty but was informed he would need to file a grievance. (*Id.*) Mr. Donald made several other attempts to report Defendant Pearson, even explaining that he wanted to press criminal charges for assault and battery, but was repeatedly told to file a grievance. (*Id.* at 13.)

Mr. Donald filed a grievance for retaliation on December 30, 2021. He alleges that Defendant Pearson responded to the grievance by claiming that Mr. Donald was the aggressive one during the visit. Mr. Donald also alleges that Defendant Gouty performed an investigation of the incident and found that Defendant's Pearson's claims lacked merit. (*Id.*)

As of filing his complaint on May 26, 2022, Plaintiff had still not received dental treatment.[3]

---

[3] Though not germane to the pending motions, the Court notes that Mr. Donald did receive dental treatment from a provider other than Dr. Pearson on February 23, 2023. Mr. Donald explained that Dr. Hale extracted two teeth, but determined that no fillings were required. (*See* Dkt. #63.)

Based on these allegations, Mr. Donald asserts claims for deliberate indifference in violation of the Eighth Amendment and for retaliation under the First and Fourteenth Amendments against Defendant Pearson. Mr. Donald's third claim asserts that Defendants Fairburn, Gouty, and Hale were also deliberately indifferent to his serious dental needs by failing to provide him with dental care. Mr. Donald's fourth claim for relief alleges that Defendants Brodeur, Maul, Hale, and Fairbairn have an unconstitutional policy or custom with respect to responding to grievances and failing to supervise their subordinates. Finally, Mr. Donald asserts a claim for supervisory liability against Brodeur, Maul, Hale, and Fairbairn, alleging that their failure to train or supervise caused the Eighth and First Amendment violations.

The CDOC Defendants move for dismissal of Mr. Donald's claims, arguing that he has failed to state a claim and that his own allegations are belied by the exhibits he attaches to the Amended Complaint. They also argue that the CDOC Defendants are entitled to qualified immunity.

Defendant Pearson similarly moves for dismissal of Plaintiff's Amended Complaint, arguing that Mr. Donald had failed to state a claim and that Defendant Pearson is protected by qualified immunity.

## LEGAL STANDARDS

### I. Pro Se Plaintiff

Mr. Donald proceeds pro se. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual

averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## II.  Failure to State a Claim Upon Which Relief Can be Granted

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts must accept well-pled allegations as true, purely conclusory statements are not entitled to this presumption. *Id.* at 678, 681. Therefore, so long as the plaintiff pleads sufficient factual allegations such that the right to relief crosses "the line from conceivable to plausible," he has met the threshold pleading standard. *Twombly*, 550 U.S. at 556, 570.

### III. Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). To determine resolve a government official's qualified immunity claims, a court must "The plaintiff must "decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. A reviewing court has discretion to address either prong first. *Id.* at 236.

Raising a qualified immunity defense in a motion to dismiss "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Sayed v. Virginia*, 744 F. App'x 542, 545-46 (10th Cir. 2018) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)). "At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Id.* at 546 (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). Accordingly, to survive a motion to dismiss, a plaintiff "need 'only allege enough factual matter' to state a claim that is 'plausible on its face and provide fair notice to a defendant.'" *Id.* (quoting *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013)).

## ANALYSIS

### I. Deliberate Indifference

Under the Eighth Amendment, prison officials can be liable for deliberate indifference to a serious medical need when "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

The test for liability of prison officials for deliberate indifference to an inmate's serious medical needs, in violation of the Eighth Amendment, involves both an objective and a subjective component. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). A plaintiff must first make non-conclusory allegations that the deprivation at issue was in fact sufficiently serious. *Id*. A medical need is "sufficiently serious" if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that "even a layperson would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim." *Id.* (citing *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)). In addition, a delay in a prisoner's medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm. *Id*. The substantial harm requirement for a deliberate indifference claim may be satisfied by showing "lifelong handicap, permanent loss, or considerable pain." *Id.* (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

10

The subjective prong of the test for deliberate indifference to an inmate's serious medical needs requires the plaintiff to present evidence (or, at the motion to dismiss stage, non-conclusory allegations) of the prison official's culpable state of mind. *Id.* at 751. The subjective component is satisfied if the accused official knows of and disregards an excessive risk to inmate health or safety. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference. *Id.* A prison medical professional who serves as a "gatekeeper" for other medical personnel capable of treating a condition may be held liable under the deliberate indifference standard if she delays or refuses to fulfill that gatekeeper role. *Id.* at 757.

Deliberate indifference does not require a finding of express intent to harm. *Mata*, 427 F.3d at 752. Thus, a plaintiff alleging deliberate indifference to serious medical need not show (or allege) that a prison official acted or failed to act believing that harm actually would befall the inmate. It is enough that the official acted or failed to act despite knowledge of a substantial risk of serious harm. *Id*. This standard is akin to criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of serious harm. *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 836-38 (1994)).

The standard for deliberate indifference to an inmate's serious medical needs lies somewhere "between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 752. The task of deciding on a motion to dismiss whether an alleged constellation of facts constitutes deliberate indifference is made more difficult because "contemporary standards and opinions of the medical profession also are highly

relevant in determining what constitutes deliberate indifference to medical care." *Id.* at 757–58 (citing *Howell v. Evans*, 922 F.2d 712, 719, *vacated after settlement by* 931 F.2d 711 (11th Cir. 1991)). For example, in *Mata*, in the context of summary judgment, the Tenth Circuit relied on expert affidavits and a CDOC health care publication to conclude that there were issues of fact as to whether a nurse knew that severe chest pain posed a serious risk of health and the failure to act was reckless under acceptable medical norms. *Id.* at 759; *see also Kellum*, 657 F. App'x at 766 (affirming denial of prison official's motion for summary judgment on question of qualified immunity, citing expert medical evidence that five-hour delay in getting obviously sick inmate to hospital substantially worsened the inmate's condition, ultimately requiring heart surgery).

The level of intent required for deliberate indifference to an inmate's serious medical needs can be demonstrated through circumstantial evidence. *Id.* "Whether a prison official had the requisite knowledge of a substantial risk to the inmate's health or safety is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*. (quoting *Farmer*, 511 U.S. at 542).

Accordingly, for Mr. Donald to overcome Defendants' motions, he is required to set forth non-conclusory allegations demonstrating that his medical need was objectively sufficiently serious, and that Defendants' delay in meeting that need caused him substantial harm. Then, to meet the subjective prong of the deliberate indifference test, Mr. Donald must provide non-conclusory allegations supporting an inference that

*each* Defendant knew about and disregarded a substantial risk of harm to his health and safety. *Id*.

### A. Objective Component

The CDOC Defendants argue that Mr. Donald has failed to adequately plead the objective prong. The Court disagrees.

Mr. Donald must plausibly allege facts showing a serious dental need. The Tenth Circuit has recognized that "considerable pain" may qualify as substantial harm under the Eighth Amendment. *Mata*, 427 F.3d at 751. The Tenth Circuit has also acknowledged that "[a] cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to lack of treatment, or the inability to engage in normal activities." *Conley v. McKune*, 529 F. App'x 914, 919 (10th Cir. 2013) (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)). In *Conley*, allegations of intense and chronic pain caused by overlapped, bucked, crowded, and crooked teeth, and the inability to chew food or properly close the mouth, were sufficient to allege a serious dental need. *See id.* at 920. In *Chance*, the Second Circuit held that allegations of extreme pain, tooth deterioration, and failure to eat properly were sufficient to satisfy the objective prong at the pleading stage. 143 F.3d at 703.

Here, Mr. Donald alleges that the untreated dental issues caused him severe headaches and that the pain was so extreme he could not think. (Dkt. #9 at 7, 8). He also alleged that he was unable to eat because the pain was so intense, and that he was losing weight. (*Id.* at 8.) In November 2021, Mr. Donald described a sharp pain and crunch, after which he spit out a fragment of his tooth. (*Id.*) At some point, he requested

Orajel to at least alleviate the pain he was experiencing, and hopefully help ease the headaches. (*Id.*) Thus, Mr. Donald has sufficiently alleged that he was experiencing considerable pain.

### B. Subjective Prong

The Court next considers whether Mr. Donald has alleged facts supporting an inference that Defendants knew about and disregarded a substantial risk of harm to Mr. Donald's health and safety. Because "§ 1983 imposes liability for a defendant's own actions[,] personal participation in the specific constitutional violation complained of is essential." *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011); *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013).

### 1. Defendant Pearson

Defendant Pearson argues that Mr. Donald has failed to plausibly allege the subjective prong of an Eighth Amendment claim, and he is therefore entitled to qualified immunity. Specifically, Defendant Pearson argues that Mr. Donald's allegations suggest only disagreement with a medical professional's recommended course of treatment, not deliberate indifference. The Court agrees.

Mr. Donald alleges that he was experiencing pain from cavities and from grinding his teeth. Mr. Donald's own allegations and the grievances and responses he attached to his original Complaint (Dkt. #1-1 at 6–8, 12–14 )[4] demonstrate that Mr. Donald saw

---

[4] Courts may consider documents attached to a plaintiff's complaint without converting a Rule 12(b)(6) motion into a motion for summary judgment if the documents are "central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Brokers Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (internal quotations omitted). The Court notes that Mr. Donald did not include these documents with his Amended Complaint. Though the Court generally will not consider documents not contained in or attached to the operative complaint, Mr.

Defendant Pearson for a dental appointment sometime in the Spring of 2021, at which time Defendant Pearson performed a dental x-ray and diagnosed Mr. Donald with several dental needs including early decay that would eventually require fillings, and three partially erupted molars. In August 2021, Defendant Pearson informed Mr. Donald that he would not perform any fillings, and instead recommended that Mr. Donald have his wisdom teeth (the three partially erupted molars) removed. Mr. Donald had a third appointment with Dr. Pearson in December 2021, where Dr. Pearson again made treatment recommendations.

Mr. Donald was not denied medical treatment. Indeed, his allegations reflect that he had at least three appointments with Defendant Pearson. Instead, Mr. Donald disagreed with this treatment recommendation in August 2021 and during the December 2021 visit. And, with respect to the mouth guard, Defendant Pearson explained to Mr. Donald that, based on his education, mouth guards can cause additional issues with the temporomandibular joint, and Dr. Pearson would therefore not prescribe one. (Dkt. #1-1 at 6.) In Mr. Donald's own words, he said that Defendant Pearson explained that "he feels mouth guards are more destructive than helpful." (*Id.*) An inmate does not state a constitutional claim where he "disagrees with a diagnosis or a prescribed course of treatment [and, as a result] does not state a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999).

---

Donald expressly referenced these documents in his Amended Complaint and referred to them in his response as well as during oral argument at Court. Accordingly, the Court finds it appropriate to view them without converting the pending motions to dismiss into motions for summary judgment. This applies only to the grievances Mr. Donald submitted with his original complaint (Dkt. #1-1 at 6–8, 12–14.)

Mr. Donald also complains that Defendant Pearson declined to take further x-rays at the December 2021 appointment, allegedly recommending treatment in areas where Mr. Donald was not experiencing pain. Again, even if Defendant Pearson's diagnosis and treatment decisions were somehow negligent, or even grossly negligent, that is still insufficient to state a deliberate indifference claim. *See Estelle*, 429 U.S. at 107 ("[T]he question whether an x-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment."); *Self v. Crum*, 439 F.3d 1227, 1234 (10th Cir. 2006) ("a misdiagnosis, even if rising to the level of medical malpractice," is insufficient to demonstrate an Eighth Amendment claim); *Mata*, 427 F.3d at 751 ("the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim"). On the basis of this authority, the Court finds that Mr. Donald has not stated a plausible Eighth Amendment claim against Defendant Pearson, and this claim should be dismissed.

### 2. CDOC Defendants

Mr. Donald's amended complaint indicates that he is suing the CDOC Defendants in their individual and official capacities. Mr. Donald's third claim for relief alleges that CDOC Defendants Fairbairn, Gouty, and Hale were aware of Mr. Donald's serious dental condition but failed to provide treatment. In his fourth and fifth claims for relief, Mr. Donald asserts various theories of supervisory liability against Defendants Brodeur, Fairbairn, Hale, and Maul for violation of the Eighth Amendment. These claims each fail.

### i. Defendant Gouty

Mr. Donald alleges that Defendant Gouty, the HSA at AVCF, failed to provide treatment for a serious medical need. He does not allege that she created a policy or custom, or that she failed to train or supervise.

There are no allegations that Defendant Gouty had the training required to provide Mr. Donald with treatment herself, or that she otherwise had a role in determining his course of treatment. Nonetheless, a prison medical professional who serves solely as a gatekeeper for other medical personnel capable of treating the inmate may be liable under a deliberate indifference standard if she "delays or refuses to fulfill that gatekeeper role." *Sealock*, 218 F.3d at 1211.

Here, Mr. Donald alleges that he attempted to get Defendant Gouty's attention during his contentious appointment with Dr. Pearson, but Defendant Gouty did not hear his shouts and Defendant Pearson told him to "shut up." (Dkt. #9.) He later alleges that he requested to speak with Defendant Gouty after the December 2021 appointment but was informed by other staff, who are not named Defendants, that he would have to put in a kite in order to speak with her. (*Id.*) Finally, he claims that he had an in-person exchange with Defendant Gouty on January 26, 2022, where she stated that she would meet with him, but "provided him with no medical treatment." (*Id.* at 15; *see also id.* at 16.)

When he was finally able to meet in person with Defendant Gouty, she corroborated his story about the contentious dentist appointment and stated that he would be refunded for the appointment. (*Id.*) Mr. Donald did receive the refund, but still was not seen by a different dentist.

As previously stated, there is no constitutional requirement that Mr. Donald be allowed to visit another dentist. Thus, Defendant Gouty had no duty to arrange such an appointment. Nor are there any allegations that she had the authority to arrange for such an appointment. Thus, Mr. Donald has failed to state an Eighth Amendment claim against Defendant Gouty. *See Sherman v. Klenke,* 653 F. App'x 580, 589 (10th Cir. 2016) (upholding grant of summary judgment in favor of HSA where HSA did not have authority to make treatment decisions or change prescriptions, and was simply responsible for the administration and operations of medical clinic).

### ii. Defendant Fairbairn

The allegations against Defendant Fairbairn similarly fail to state a deliberate indifference claim. Defendant Fairbairn is the warden at AVCF. Mr. Donald makes only conclusory allegations against Defendant Fairbairn; there is no indication that this individual was personally involved in any delayed or denied medical care, or even that he had the authority to act as a gatekeeper in the provision of care to Mr. Donald.

Moreover, prison officials (like Defendant Fairbairn) generally may rely on the advice and course of treatment prescribed by medical personnel (such as Dr. Pearson). *See McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009) ("[A] prison official may rely on a medical professional's opinion if such reliance is reasonable."); *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) ("Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals.") (citation omitted). Here, the grievances show that Mr. Donald was prescribed a course of treatment. It was reasonable for Defendant Fairbairn to rely on

this course of treatment prescribed by a medical professional. Accordingly, the deliberate indifference claim against Defendant Fairbairn fails.

### iii. Defendant Hale

Defendant Hale appears to be a CDOC dentist. Mr. Donald alleges that Defendant Hale was deliberately indifference to his medical needs because, after reviewing both of Mr. Donald's grievances against Dr. Pearson as well as his dental history, Defendant Hale "did nothing to intervene or provide [Mr. Donald] with medical treatment." (Dkt. #9 at 15.)[5]

First, it is unclear what Mr. Donald believes Defendant Hale could have done to intervene during the contentious appointment with Defendant Pearson, particularly given that there are no allegations that Defendant Hale was nearby or otherwise available during that appointment. Second, other than conclusory allegations, nothing suggests that Defendant Hale delayed or prevented Mr. Donald from seeking medical treatment. Indeed, the response to Mr. Donald's grievance shows that Defendant Hale instructed Mr. Donald to submit a request for dental treatment, or to self-declare an emergency if he was experiencing pain. (Dkt. #1-1 at 7.) Third, Mr. Donald *was* receiving treatment. He had a treatment plan from Defendant Pearson that he elected not to pursue because he did not agree that his wisdom teeth needed to be pulled. Mr.

---

[5] The Court notes that Defendant Hale Simply denying a grievance is insufficient to stating a claim for deliberate indifference. *Scott v. Montoya*, No. 17-cv-01364-KLM, 2019 WL 688053, at *7 (D. Colo. Feb. 15, 2019) ("Without more, dissatisfaction with the result of . . . grievance requests [is] not sufficient to state a constitutional violation." (citing *Sherratt*, 545 F. App'x at 747)). Mr. Donald appears to acknowledge this, as he states "Plaintiff only relies on the grievance as evidence of Defendant Hale having adequate knowledge of plaintiff's claims. Plaintiff does not maintain that simply because Hale answered the grievance that he is culpable." (Dkt. #9 at 15.)

Donald has pointed to no case law stating the Eighth Amendment entitles him to medical treatment with a provider of his choosing or a second medical opinion, and that Hale is liable for failing to provide such options. Accordingly, the deliberate indifference claim against Defendant Hale should be dismissed.

### 3. Supervisory Liability for Failure to Train and Supervise

The Court briefly addresses the Eighth Amendment claims against Brodeur, Hale, Fairbairn, and Maul to the extent they are premised on supervisory liability. Because Mr. Donald has failed to plead a constitutional claim for deliberate indifference, his fourth and fifth claims for supervisory liability with respect to the Eighth Amendment necessary fail. *Doe v. Woodard*, 912 F.3d 1278, 1290 (10th Cir. 2019) ("[s]upervisors cannot be liable under § 1983 where there is no underlying violation of a constitutional right by a supervisee."); *Sherman*, 653 F. App'x at 589 ("Absent an underlying constitutional violation, [an inmate's] claim for supervisory liability fails.").

## II. Retaliation

Mr. Donald alleges that Dr. Pearson retaliated against him for filing the grievances by verbally chastising him, forcefully shoving a mirror into his hand, and failing to provide the requested dental treatment during the December 29, 2021 dental appointment. He also alleges that Defendants Maul, Brodeur, Hale, and Fairbairn failed to train or supervise their subordinates, which caused the First Amendment violation.

"Although retaliation is not expressly discussed in the First Amendment, it may be actionable inasmuch as governmental retaliation tends to chill citizens' exercise of their constitutional rights." *Perez v. Ellington*, 421 F.3d 1128, 1131 (10th Cir. 2005) (internal citation omitted). To state a claim of unconstitutional retaliation under § 1983,

Plaintiff must allege facts to demonstrate: (1) he was engaged in constitutionally protected activity, (2) Defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) Defendants' adverse action was substantially motivated as a response to Plaintiff's constitutionally protected activity. *See Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

### A. Defendant Pearson

For the purposes of the motion to dismiss, Defendant Pearson does not contest that Mr. Donald engaged in protected activity. (*See* Dkt. #34 at 7.) However, he argues (as do the CDOC Defendants) that Mr. Donald has failed to allege that a person of ordinary firmness would have been deterred by anything Dr. Pearson allegedly said or did and "does not identify anything that could reasonably be viewed as retaliatory." (*Id.*) The Court disagrees. Mr. Donald has alleged that, after submitting grievances that he was not receiving appropriate medical care, he was forced to read those grievances aloud during a dental appointment, subjected to physical and verbal aggression, and threatened with a dental procedure on teeth that he may not have needed. Further, Mr. Donald alleges that Dr. Pearson made a veiled threat that he could make the surgeries very painful, and Mr. Donald believed that Dr. Pearson would pull healthy teeth as punishment for filing the grievances. (*See* Dkt. #9 at 8 ("Do you think it was wise to write something like this when I'm the one who is going to perform a surgical procedure on you?").)

Further, Mr. Donald has plausibly alleged that Dr. Pearson's retaliatory conduct was substantially motivated by the protected activity of filing a grievance. Tenth Circuit

case law allows an inference of whether the defendant's response was "substantially motivated" by protected conduct where evidence showed (1) the defendants were aware of the protected activity; (2) the plaintiff directed his complaint to the defendants' actions; and (3) the alleged retaliatory act "was in close temporal proximity to the protected activity." *Allen v. Avance*, 491 F. App'x 1, 6 (10th Cir. 2012) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010)). All three of these factors were present here.

Furthermore, Defendant Pearson is not entitled to qualified immunity as to the First Amendment retaliation claim against him. It is clearly established that a prison official may not retaliate against an inmate who files a grievance against him. *See Parker v. Ritter*, No. 08-cv-00737–MSK–KLM, 2010 WL 1286081, at *9 (D. Colo. March 25, 2010) (citing *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir.1992)); *Bell v. Pollack*, No. 07–cv–00496–REB–MEH, 2008 WL 652324, at *7–8 (D. Colo. March 10, 2008) (citing *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990); *Purkey v. Green*, 28 F. App'x 736, 746 (10th Cir.2001)) (noting that part of First Amendment right of access to court included right to first file internal grievance against prison official and finding that right to be free from retaliation for filing grievance clearly established).

Factual development may reveal that Mr. Donald was, in fact, the one who became aggressive during the dental appointment, or that Defendant Pearson never engaged in any retaliatory action but simply maintained that his course of treatment was appropriate. But such are not presently before the Court and are more properly addressed at the summary judgment stage. The Court, therefore, recommends that

Defendant Pearson's motion to dismiss be denied with respect to Mr. Donald's First Amendment retaliation claim.

### B. Defendants Maul, Brodeur, Hale, and Fairbairn

Finally, Mr. Donald seeks to hold Defendants Maul, Brodeur, Hale, and Fairbairn responsible for Dr. Pearson's alleged retaliation because they failed to properly train and supervise their subordinates. The CDOC Defendants argue that this claim fails because Mr. Donald has failed to sufficiently allege the constitutionally deficient training program at issue and does not state who the CDOC Defendants failed to supervise, or how the alleged lack of supervision caused the constitutional violation. The Court agrees.

A defendant may not be held liable for constitutional violations merely because he or she holds a supervisory position. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). A supervisor's liability under § 1983 "must be predicated on the supervisor's deliberate indifference" and a plaintiff "must show that an 'affirmative link' exists between the [constitutional] deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.'" *Green v. Branson*, 108 F.3d at 1302. "[A] supervisor . . . may be held liable where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." *Davidson v. Kansas*, 2001 WL 533207, *4 (D. Kan. 2001) (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988)). Stated differently, "[s]upervisory liability exists even without personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional

rights and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987) (holding that the existence of a constitutionally deficient policy cannot be inferred from a single wrongful act).

To prevail on a theory of supervisory liability that is premised on a failure to train, "a plaintiff must ordinarily show a defendant 'had actual or constructive notice that a particular omission in [a training] program cause[d officials] to violate citizens' constitutional rights' and nonetheless 'made a conscious choice to retain [the] deficient training program.'" *Hurst v. Madera*, No. 16-CV-01914-KMT, 2018 WL 684769, at *5 (D. Colo. Feb. 2, 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Here, Mr. Donald fails identify a deficient training program. Nor are there allegations explaining the causal connection between any deficient training or lack of supervision and Dr. Pearson's allegedly retaliatory conduct. General, conclusory allegations such as those contained in Mr. Donald's failure to train and supervise claims cannot survive a motion to dismiss.[6]

## CONCLUSION

In light of the foregoing, it is hereby

**RECOMMENDED** that Defendants Fairbairn, Gouty, Hale, Brodeur, and Maul (the "CDOC Defendants") Rule 12(b)(6) Motion to Dismiss (Dkt. #34) be **GRANTED** and

---

[6] To the extent Mr. Donald sues any of the Defendants in their official capacities, he necessarily seeks injunctive relief. However, for the reasons set forth above, Mr. Donald's only viable claim is against Dr. Pearson for retaliation. Mr. Donald has not plausibly alleged a claim for failure to train or supervise, *see Crowson v. Washington Cnty.*, 983 F.3d 1166, 1184 (10th Cir. 2020), nor has he adequately alleged that a policy or custom played a part in any alleged constitutional violations. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Monell v. New York City Dept. of Social Servs*, 436 U.S 658, 690 (1978)). Accordingly, any request for injunctive relief is properly denied.

the claims against Defendants Gouty, Fairbairn, Brodeur, Maul, and Hale in their individual and official capacities be **DISMISSED**. It is further

 **RECOMMENDED** that Defendant Douglas Pearson's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. #34) be **GRANTED** with respect to Mr. Donald's Eighth Amendment deliberate indifference claim but **DENIED** with respect to his First Amendment retaliation claim.

 **NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412–13 (10th Cir. 1996).**

Date: May 22, 2023

          _____
          N. Reid Neureiter
          United States Magistrate Judge